UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────┐
│ USDS SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____             │
│ DATE FILED: 9/9/2014              │
└──────────────────────────────────┘
```

ILYA SEGAL, *et al.*,

                Plaintiffs,

   -v-

DMITRY FIRTASH, *et uno*,

                Defendants.

No. 13-cv-7818 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Ilya Segal, Vadim Segal, and Dancroft Holdings Ltd. ("Dancroft") originally brought this action in New York State Supreme Court, New York County, against Defendants Dmitry Firtash and Public Joint Stock Company Commercial Bank Nadra ("Nadra"). Defendants removed the action to this Court on the basis of diversity jurisdiction. Now before the Court is Plaintiffs' motion to remand for lack of subject matter jurisdiction. For the reasons set forth below, the motion is denied.

I. BACKGROUND

A. Facts[1]

This case involves a series of financial and legal transactions that allegedly took place in Ukraine. Plaintiffs Ilya Segal and Vadim Segal (collectively, the "Segals") are United States citizens residing in New York. (Compl. ¶¶ 6–7.) Plaintiff Dancroft is a Cyprus corporation

---

[1] The facts are drawn from the notice of removal (Doc. No. 1 ("NOR")) and the Complaint filed in New York Supreme Court (*id.* Ex. A ("Compl.")). Although Plaintiffs filed an Amended Complaint after this action was removed (Doc. No. 18 ("Am. Compl.")), post-removal amendments to the complaint may not be considered on a motion for remand. *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam).

owned and operated by the Segals. (*Id.* ¶ 8.) In 2005, "the Segals, through [Dancroft], created [Kakhovka Prom Agro ("Kakhovka")], a limited liability company currently registered in . . . Ukraine." (*Id.* ¶ 9.) In 2006, Kakhovka started constructing a soybean processing plant. (*Id.* ¶ 23.) To finance this undertaking and other projects, Kakhovka negotiated a number of loans with Defendant Nadra, a Ukrainian bank. (*Id.* ¶¶ 16, 24–26.) In 2008, Nadra came under the effective control of Defendant Dmitry Firtash, a Ukrainian citizen. (*Id.* ¶¶ 10, 27.)

In 2009, Nadra sought to renegotiate the terms of "loans Kakhovka and other companies associated with the Segals had taken out" (the "Kakhovka Loans"). (Compl. ¶ 29.) On July 1, 2009, Firtash and other Nadra representatives hosted a meeting with Vadim Segal and his attorney, Sergey Sukholinsky-Mestechkin ("Sukholinsky"), in one of Firtash's offices. (*Id.* ¶¶ 30–32.) At the meeting, the parties agreed that Vadim Segal would buy the Kakhovka Loans from Defendants for less than fifty percent of their nominal value and, in addition, buy "the right of demand for another two . . . groups of loans [apparently unrelated to Kakhovka]" for fifty percent of those loans' outstanding amounts. (*Id.* ¶¶ 34–35). In return, Defendants agreed that the "payments by the Segal[s'] companies to Nadra," presumably under the Kakhovka Loans, "[would be] suspended." (*Id.* ¶ 39.) Firtash and one of his associates stated to Vadim Segal and Sukholinsky that, in order for the agreement to receive judicial approval, Nadra would first need to sue Kakhovka and some of the Segals' other companies, and that Firtash could "influence" the speed with which the Ukrainian court would act. (*Id.* ¶¶ 37–38.) The Complaint does not explain why the parties believed the agreement needed judicial approval, why judicial approval depended on the institution of a lawsuit, and whether the "influence" alluded to by Firtash referred to bribery or some other form of corruption.

2

In August 2009, Nadra filed suit against Kakhovka in the Commercial Court of the Kyiv Region in Ukraine. (Compl. ¶ 44.) Shortly after the suit was filed, Sukholinsky met with Firtash's associates, who informed him that everything was going according to the plan discussed at the July 1 meeting. (*Id.* ¶ 47.)

Sometime in the fall of 2009, one of Firtash's associates, Valentyna Zhukovskaya, summoned Vadim Segal to her office and informed him that Firtash did not plan to honor the terms of the July 1 agreement. (Compl. ¶¶ 48–50.) Zhukovskaya demanded that Kakhovka pay all outstanding debts to Nadra immediately, or face a restructuring of the loans that would result in an annual interest rate of over twenty percent. (*Id.* ¶¶ 50–51.) Vadim Segal rejected these demands and left. (*Id.* ¶ 52.) In the spring of 2010, Vadim Segal met with Firtash, who reiterated that he and Nadra would not honor the terms of the July 1 agreement. (*Id.* ¶ 54.)

A series of complicated legal proceedings and transactions in Ukraine then ensued. (Compl. ¶¶ 58–106.) As a result of these proceedings, Nadra seized control of the soybean plant owned by Kakhovka. (*Id.* ¶¶ 75–77, 89.) Firtash also caused criminal proceedings to be brought against Kakhovka and the Segals in Ukraine. (*Id.* ¶¶ 92–106.)

### B. Procedural History

Plaintiffs filed the Complaint in New York State Supreme Court, New York County, on July 17, 2013. (Compl.) The Complaint asserts causes of action for breach of contract, fraud, unjust enrichment, injurious falsehood, intentional infliction of emotional distress, conspiracy to commit fraud, concerted action liability, and aiding and abetting liability. (*Id.* ¶¶ 107–152.) On November 4, 2013, Defendants removed the action to this Court on the basis of diversity jurisdiction. (NOR at 2.) In their Notice of Removal, Defendants argued that Plaintiff Dancroft

was fraudulently joined to the action and must be ignored for purposes of diversity jurisdiction. (*Id.* at 2–19.) Plaintiffs filed their Amended Complaint on November 20, 2013. (Am. Compl.)

On December 20, 2013, Plaintiffs filed the instant motion to remand, arguing that Dancroft was not fraudulently joined and that Dancroft's presence in this case defeats diversity jurisdiction. (Doc. No. 21.) The motion was fully briefed on January 31, 2014. In deciding the motion, the Court has considered Plaintiffs' memorandum (Doc. No. 24 ("Mem.")), Defendants' opposition (Doc. No. 25), and Plaintiffs' reply (Doc. No. 30).

## II. LEGAL STANDARD

A defendant in an action pending in state court may remove that action to federal court only if the pending action could have originally been brought in federal court on the basis of either federal question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. § 1441(b). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citation omitted). If the removing party is invoking diversity jurisdiction, it is that party's burden to demonstrate, by a preponderance of the evidence, that complete diversity among the parties existed not only at the time of removal, but also when the state complaint was filed. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56–57 (2d Cir. 2006) ("We generally evaluate jurisdictional facts . . . on the basis of the pleadings, viewed at the time when defendant files the notice of removal."); *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("[W]here [the] basis of removal is diversity[,] then diversity of citizenship must exist at

4

[the] time [the] action was filed in state court as well as at [the] time of removal." (citation omitted)); *id.* at 305 ("Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify [its] allegations by a preponderance of [the] evidence." (citation and internal quotation marks omitted)). A case may be remanded back to state court "[i]f the record . . . does not reflect diversity." *Vasura v. Acands*, 84 F. Supp. 2d 531, 535–36 (S.D.N.Y. 2000); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### III. DISCUSSION

The parties do not dispute that if this were truly a suit by two United States citizens residing in New York (the Segals) and a Cyprus corporation (Dancroft) against two Ukrainian citizens (Firtash and Nadra), diversity jurisdiction would not lie, since "the presence of aliens on two sides of a case destroys diversity jurisdiction." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980). Defendants contend, however, that the Court must disregard the presence of Dancroft because it was fraudulently joined to defeat diversity. Specifically, Defendants argue that the Complaint does not adequately allege Dancroft's claims for breach of contract, fraud, unjust enrichment, or injurious falsehood, and that Dancroft's claims for conspiracy, concerted action liability, and aiding and abetting liability fail as a matter of law on other grounds.[2] (NOR at 7–14.) Plaintiffs contend that the Complaint does adequately plead Dancroft's claims for breach of contract, fraud, unjust enrichment, and

---

[2] Dancroft does not assert an intentional infliction of emotional distress claim.

injurious falsehood.[3]  (Mem. at 5.)

### A.  Fraudulent Joinder

The doctrine of fraudulent joinder prevents a plaintiff from "defeat[ing] a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998).  If a removing defendant can prove that the non-diverse party was fraudulently joined, the federal court will retain jurisdiction over the removed action so long as "the requirements of jurisdiction are otherwise met."  *See Sonnenblick–Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88 (S.D.N.Y. 1996).  Although the doctrine is generally invoked in cases in which plaintiffs join non-diverse parties as defendants, courts have also applied it in cases in which non-diverse parties join as plaintiffs. *See Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981).

"In order to show that naming a non-diverse [party] is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that [the non-diverse plaintiff can state a claim against any of the defendants]." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (quoting *Pampillonia*, 138 F.3d at 461) (alterations added).  In other words, absent "outright fraud," *see id.*, the fraudulent joinder analysis focuses on "whether recovery is *per se* precluded," *Nemazee*

---

[3] Plaintiffs concede that the Complaint cannot state any claims for conspiracy, concerted action liability, or aiding and abetting liability unless it states a claim for breach of contract, fraud, unjust enrichment, or injurious falsehood. (Mem. at 5 n.2.)

*v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002); *see also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, No. 02-cv-9809 (GEL), 2003 WL 1907978, *4 (S.D.N.Y. Apr. 17, 2003). In performing this analysis, courts must ask whether "a court of the forum state would . . . recognize the plaintiff's claim as stating a cause of action" and must apply the law of the forum state, including the pleading standard of that state. *Kuperstein v. Hoffman-La Roche, Inc.*, 457 F. Supp. 2d 467, 470–72 & n.29 (S.D.N.Y. 2006); *see also MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009); *DNJ Logistic Grp., Inc. v. DHL Exp. (USA), Inc.*, 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010). The standard is not whether the claim would likely survive a motion to dismiss, but whether there is any reasonable possibility that the state court would allow it to proceed. *Kuperstein*, 457 F. Supp. 2d at 471; *DNJ Logistic Grp.*, 727 F. Supp. 2d at 165. In other words, "all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461.

In determining whether a party has been fraudulently joined, a court must look primarily to the pleadings. *See MBIA*, 706 F. Supp. 2d at 388. The pleadings must be considered as they existed at the time of removal and post-removal filings must not be considered "when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Id.* at 395 (citations and internal quotation marks omitted). That said, courts may consider documents other than the pleadings "to the extent that the factual allegations [in those documents] . . . clarify or amplify the claims actually alleged [in the pleadings]"; in other words, courts may "look beyond the pleadings to determine *if the pleadings* can state a cause of action." *Id.* at 395–96 (emphasis added) (internal quotation marks omitted).

B. Dancroft's Claims

Here, the Court applies the pleading standard and substantive law of New York. It is well established that the New York pleading standard is more forgiving than the federal standard. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 215 n.4 (2d Cir. 2011). To state a claim under the New York standard, a complaint must plead facts with sufficient particularity "to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." N.Y. C.P.L.R. § 3013; *see also Guggenheimer v. Ginzburg*, 401 N.Y.S.2d 182, 185–86 (N.Y. 1977) (describing standard as whether the complaint "set[s] forth [claims] with sufficient factual specificity and fullness . . . to identify the transaction and indicate the theory of redress to enable the court to control the matter and the adversary to prepare").

Construing all factual and legal issues in favor of Plaintiffs, the Court finds that there is no reasonable possibility that the Complaint meets this pleading standard with respect to any of Dancroft's claims.

1. Breach of Contract

To state a breach of contract claim under New York law, a plaintiff must plead "(1) the existence of an agreement, (2) performance of the contract by the plaintiff, (3) breach of the agreement by the defendant, and (4) damages." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007). Here, the Complaint does not allege any facts supporting the existence of an agreement between Dancroft and either Firtash or Nadra. Dancroft is not mentioned once in the portions of the Complaint describing the July 1 meeting and the alleged agreement made at that meeting. (Compl. ¶¶ 31–39.) According to the Complaint, the meeting

8

resulted in an agreement providing that "*Vadim Segal* would buy [two groups of Kakhovka Loans]" and that "*Vadim Segal* would buy the right of demand for another two outstanding groups of loans." (*Id.* ¶¶ 34–35 (emphases added).)   Firtash and Nadra promised that the agreement "replaced the requirement to make payments under the [Kakhovka] Loans to Nadra." (*Id.* ¶ 39.) There is no allegation that Dancroft was a party to this agreement, that Dancroft had any involvement whatsoever with the loans at issue, or that any contractual obligations flowed to or from Dancroft.

Indeed, the Complaint attaches a copy of the purported written agreement executed at the July 1 meeting, which is titled "Meeting of D.F. [presumably Dmitry Firtash] and V.S. [presumably Vadim Segal]," and which describes various promises by "D.F." and "V.S." (Doc. No. 25 Ex. 1.)[4] Nowhere does that agreement mention Dancroft.  Plaintiffs argue that the written agreement is not exhaustive and that the contract also includes oral agreements.  (Mem. at 6 n.3.) As discussed, however, the allegations about oral agreements nowhere mention Dancroft.  (*See* Compl. ¶¶ 31–39.)  Between the introductory paragraphs – 8 and 9 – and the prayer for relief at the end of the Complaint, Dancroft is not mentioned by name even once.  (*See id.* ¶¶ 8–9; *id.* at 31.)

Plaintiffs make two principal arguments that the Complaint adequately pleads a breach of contract claim by Dancroft.  First, citing an affidavit from Vadim Segal and allegations from the Amended Complaint, Plaintiffs argue that Vadim Segal entered into the July 1 agreement "on [his] own behalf, on behalf of Ilya Segal, and on behalf of Dancroft."  (Mem. at 6 (citing Doc.

---

[4] The original written agreement was attached to the Complaint and thus may be considered as part of the pleading. (Compl. Ex. 1.)  Defendants have provided an English translation of the agreement (Doc. No. 25 Ex. 1), the accuracy of which Plaintiffs apparently do not dispute. (Mem. at 6 n.3.)

No. 22; Am. Compl. ¶¶ 31–39).)  The Court cannot find any allegations in the Complaint that even arguably support this theory and declines to consider the affidavit or the Amended Complaint, both of which are post-removal filings intended to add new theories of recovery.  *See MBIA*, 706 F. Supp. 2d at 388.

Second, Plaintiffs cite to paragraphs 108 and 111 of the Complaint, which they contend are adequate to state the existence of an agreement between Dancroft and the Defendants. (Mem. at 6 (citing Compl. ¶¶ 108, 111).)  Paragraph 108 reads, "On or about July 1, 2009, Nadra entered an agreement with Plaintiffs.  A copy of the writing memorializing this agreement is annexed as Exhibit 1."[5]  (Compl. ¶ 108.)  Paragraph 111 reads, "The Plaintiffs have sustained damages as a result of Nadra's breach in an amount to be proved at trial." (*Id.* ¶ 111.)  Plaintiffs argue that because these two paragraphs refer to "Plaintiffs" in the collective, which includes Dancroft, they have adequately pleaded the existence of an agreement between Dancroft and Defendants.  The Court disagrees and finds that these allegations fall short of the New York pleading standard.  Both paragraphs consist entirely of legal conclusions and lack the factual particularity necessary "to identify the transaction and indicate the theory of redress" on which Dancroft's claim is based.  *Guggenheimer*, 401 N.Y.S.2d at 185–86; *see also Godfrey v. Spano*, 892 N.Y.S.2d 272, 278 (N.Y. 2009) (noting that, even under New York's liberal pleading standard, "conclusory allegations – claims consisting of bare legal conclusions with no factual specificity – are insufficient to survive a motion to dismiss").  To the extent that these paragraphs incorporate by reference the portions of the Complaint discussing the July 1 meeting, those portions of the Complaint allege no facts about Dancroft at all.  (*See* Compl. ¶¶ 31–39.)  Thus,

---

[5] As discussed, the document attached as Exhibit 1 makes no mention of Dancroft.

the purely conclusory allegations asserting a claim by Dancroft cannot be cured by incorporating factual allegations that make no mention of Dancroft.

For these reasons, the Court finds that there is no possibility, based on the Complaint, that Dancroft can state a breach of contract claim against either of the Defendants.

## 2. Fraud

To state a fraud claim under New York law, a plaintiff must allege: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 646 N.Y.S.2d 76, 80 (N.Y. 1996)). The Complaint nowhere alleges that Defendants made any misrepresentations at all to Dancroft. Indeed, the Complaint is quite explicit that the alleged misrepresentations at issue – that the July 1 agreement replaced the prior loan agreements between Kakhovka and Nadra and that a lawsuit would be needed to effectuate the July 1 agreement – were made to "the Segals and Kakhovka." (*See* Compl. ¶¶ 39, 113, 116–117, 119.)

Plaintiffs argue that because Vadim Segal was a principal of Dancroft, any statement made to him was also made to Dancroft. (Mem. at 9.) This is incorrect. It is axiomatic that a corporation is legally distinct from a shareholder of that corporation, unless there is some basis for piercing the corporate veil. *See Port Chester Elec. Const. Co. v. Atlas*, 389 N.Y.S.2d 327, 331 (N.Y. 1976). Thus, any statement that is made to a shareholder of a corporation cannot form the basis of a fraud claim by the corporation unless the shareholder was acting on the

11

corporation's behalf. *Cf. Ruckle v. Roto Am. Corp.*, 339 F.2d 24, 28 (2d Cir. 1964) (holding, in federal securities context, that where "statements and omissions were directed at shareholders and not at the corporation[,] . . . a corporation that has not been the victim of fraud cannot sue"). Here, there is no allegation stating – and no allegation from which it could be inferred – that Vadim Segal was acting on behalf of Dancroft at the July 1 meeting. Accordingly, the Court finds that there is no possibility that Dancroft can state a fraud claim against either of the Defendants.

### 3. Unjust Enrichment and Injurious Falsehood[6]

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation and internal quotation marks omitted). Here, the Complaint states no unjust enrichment claim by Dancroft, since there is no allegation that Defendants benefitted at Dancroft's expense. Although Plaintiffs' unjust enrichment theory is premised on Defendants' acquisition of property under false pretenses (Compl. ¶ 122), the Complaint does not plead that any of the property in question belonged to Dancroft. Accordingly, there is no possibility that Dancroft can state an unjust enrichment claim against either of the Defendants.

"The tort of trade libel or injurious falsehood requires the knowing publication of false

---

[6] The Court notes that Plaintiffs have dropped the claims for unjust enrichment and injurious falsehood from the Amended Complaint. Although the Court must generally determine removability on the basis of the pleading that existed at the time of removal, *MBIA*, 706 F. Supp. 2d at 388, it is unclear whether the Court's analysis should take into account claims that were pleaded in the state complaint, but dropped after removal. The Court need not address this issue because both claims are inadequately pleaded in the Complaint.

and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment." *Banco Popular N. Am. v. Lieberman*, 905 N.Y.S.2d 82, 85 (App. Div. 1st Dep't 2010). The Complaint contains no allegation that either of the Defendants published any false and derogatory facts about Dancroft. Thus, the Court finds that there is no reasonable possibility that Dancroft can state an injurious falsehood claim against Defendants.

### 4. Plaintiffs' Remaining Claims

As Plaintiffs concede, Dancroft's claims for conspiracy, concerted action liability, and aiding and abetting liability require the existence of an underlying tort and cannot succeed unless one of the other claims is adequately pleaded. (Mem. at 5 n.2.) Because Dancroft's tort claims for fraud, unjust enrichment, and injurious falsehood – like its claim for breach of contract – fail as a matter of law, its claims for conspiracy, concerted action liability, and aiding and abetting liability must fail as well.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that there is no possibility that Dancroft can assert any of the claims in the Complaint against either of the Defendants. The Court thus disregards Dancroft's presence for purposes of determining removability and finds that the Complaint was properly removed on the basis of complete diversity between Plaintiffs Ilya Segal and Vadim Segal and Defendants Dmitry Firtash and Nadra.

Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs' motion for remand is DENIED. The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 21.

13

IT IS FURTHER ORDERED THAT the parties shall appear for an initial status conference on Friday, October 10, 2014 at 3:30 p.m. in Courtroom 905 of the Thurgood Marshall United States District Court for the Southern District of New York, 40 Foley Square, New York, New York.

IT IS FURTHER ORDERED THAT, by October 2, 2014 at 4:00 p.m., the parties shall jointly submit a letter, not to exceed five (5) pages, providing the following information in separate paragraphs:

(1)    A brief statement of the nature of the action and the principal defenses thereto;

(2)    A brief explanation of why venue lies in this Court and, if so, why another forum would not be more convenient;

(3)    A brief explanation of the basis for the Court's exercise of personal jurisdiction over Defendants;

(4)    A brief explanation of why the alleged contract, which appears to contemplate illegal activity by one or both parties, is not void as against public policy;

(5)    A brief description of all outstanding motions and/or outstanding requests to file motions;

(6)    A brief description of any discovery that has already taken place, and that which will be necessary for the parties to engage in meaningful settlement negotiations;

(7)    A list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any;

(8)    The estimated length of trial; and

(9)    Any other information that the parties believe may assist the Court in resolving this action.

IT IS FURTHER ORDERED THAT, by October 2, 2014 at 4:00 p.m., the parties shall submit to the Court a proposed case management plan and scheduling order. A template for the

order is available at:  http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=1059.

The status letter and the proposed case management plan should be filed on ECF and emailed to the following email address: sullivanNYSDchambers@nysd.uscourts.gov.   Please consult the Court's Individual Rules with respect to communications with chambers and related matters.

SO ORDERED.

Dated:       September 9, 2014
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE